UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
EASTERN DIVISION

| | |
|---|---|
| ANDREA PAPPAGALLO,<br><br>    Plaintiff,<br><br> vs.<br><br>TENNECO AUTOMOTIVE OPERATING COMPANY INC. SEVERANCE BENEFIT PLAN, effective as of July 20, 2018; TENNECO AUTOMOTIVE OPERATING COMPANY INC.; and TENNECO INC.,<br><br>    Defendants. | Case No. 4:20-cv-10422-SDD-EAS<br><br>Hon. Stephanie Dawkins Davis<br><br>Magistrate Judge<br>Elizabeth A. Stafford |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S PROCEDURAL CHALLENGE**

Pursuant to the Court's Order dated November 5, 2020, Defendants Tenneco Automotive Operating Company Inc. Severance Benefit Plan (the "Plan"), Tenneco Automotive Operating Company Inc. ("TAOC"), and Tenneco Inc. (collectively, "Defendants") submit this opposition to the procedural challenge brought by Plaintiff Andrea Pappagallo ("Plaintiff") (ECF No. 21).

As Defendants have previously explained, Plaintiff has brought this lawsuit challenging the Plan Administrator's denial of his claim for Group 1 severance benefits based on a straightforward application of the Plan's clear language. Because Plaintiff—who briefly served as Vice President and General Manager Braking following Tenneco Inc.'s acquisition of Federal Mogul in October 2018—was never a Section 16 Officer of

1

Tenneco Inc., he was not entitled to Group 1 benefits under the Plan. Further, Plaintiff has not, and cannot, demonstrate any procedural irregularity or bias that would warrant extra-record discovery in this matter.[1]

## LEGAL STANDARD

Although relegated to a footnote, Plaintiff argues in his procedural challenge that he seeks unspecified "limited discovery" under *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 618–19 (6th Cir. 1998). ECF No. 21, at 1 n.1. An overarching goal of ERISA is to provide quick and efficient resolution of claims related to employer-provided benefits. *See Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990). Consistent with that goal, when courts review a plan administrator's denial of a benefits claim, they limit their review to the administrative record. In limited circumstances, a reviewing court may consider other evidence "if that evidence is offered in support of a procedural challenge to the administrator's decision." *Wilkins*, 150 F.3d at 619 (Gilman, J., concurring). In determining whether to permit such additional discovery, first, "a court must ask whether or not the additional evidence the plaintiff seeks is 'necessary to resolve' the plaintiff's procedural claim." *Jones v. Iron Workers Local 25 Pension Fund*, 2014 WL 12775664, at *4 (E.D. Mich. Aug. 15, 2014). Second, "a court must decide whether the additional evidence, once

---

[1] Pursuant to the Court's Scheduling Order for ERISA Action (ECF No. 18, at 2), the parties previously submitted their respective Standard of Review Statements. ECF Nos. 19-20. The purpose of the current procedural challenge submissions is limited to "determin[ing] whether permitting limited discovery is appropriate." ECF No. 18, at 3. Accordingly, Defendants object to Plaintiff's use of their procedural challenge submission statement to reargue the appropriate standard of review.

gathered, 'colorably establishes' the plaintiff's procedural claim." *Id.* (citing *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 431 (6th Cir. 2006)).

The plaintiff bears the burden of demonstrating the necessity of the requested extra-record discovery to establishing a procedural deficiency. *See, e.g., Pediatric Special Care, Inc. v. United Med. Res.*, 2011 WL 133038, at *2–3 (E.D. Mich. Jan. 14, 2011). And even if the plaintiff meets that burden, any such discovery must be strictly limited to the procedural challenges. *Wilkins*, 150 F.3d at 619.

## ARGUMENT

Plaintiff fails to establish that additional discovery is necessary or appropriate to resolve the alleged procedural defects. Plaintiff also does not articulate in his procedural challenge what "limited discovery" he is actually seeking.

**A.   Discovery on Which Entity Decided Plaintiff's Benefits Claim Is Unwarranted.**

*1.    Plaintiff Does Not Identify Any Authority to Support Discovery.*

Plaintiff fails to proffer any legal authority to support his contention that a dispute over which entity decided a plaintiff's benefits claim entitles that plaintiff to discovery. Plaintiff relies on *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355 (6th Cir. 2009), for the proposition that a procedural defect may occur when an entity other than the one authorized by the Plan decides a benefits claim. *See* ECF No. 21, at 7–8. But *Shelby* notably did not provide for any discovery beyond the administrative record, and Plaintiff proffers no case supporting such discovery. *See* **Ex. 2** (*Shelby* Scheduling Order, No. 2:06-cv-02549-BBD-tmp, PageID 23). Defendants also object to Plaintiff's attempt (at

3

9) to use his procedural challenge statement to reargue the appropriate standard of review in this matter.[2] *See supra* at 2 n.1.

    2.    *The Plan Administrator (TAOC) Decided Plaintiff's Benefits Claim.*

Plaintiff's newfound allegation that Tenneco Inc., rather than the Plan Administrator, decided Plaintiff's benefits claim is contravened by the administrative record. As plainly outlined in the Tenneco Automotive Operating Company Inc. Severance Benefit Plan and Summary Plan Description (Effective as of July 20, 2018) ("Plan Document"), TAOC is the Plan Administrator. *See* **Ex. 1** (Plan Document), §§ 1, 14.b, 14.e. The Plan Document clearly conveys discretionary authority on TAOC to, *inter alia*, determine an individual's eligibility for benefits. *Id.* § 14.c; *see also* ECF. No. 20, at 2 (Defs. Standard of Review Stmt.). And the administrative record is clear that TAOC decided Plaintiff's benefit claim and appeal.

The detailed letters to Plaintiff denying both his benefits claim and subsequent appeal explicitly and repeatedly identify the Plan Administrator as the decision-maker. *See, e.g.*, ECF No. 21-3, at 1 (June 26, 2019 Benefit Denial Letter) ("The *Plan Administrator* has considered the claim . . . and this letter is to inform you that Mr. Pappagallo's claim . . . is denied.") (emphasis added); ECF No. 21-7, at 1 (Oct. 15, 2019 Appeal Denial Letter) ("The *Plan Administrator* has considered the information provided in the Appeal Letter and this letter is to inform you that Mr. Pappagallo's appeal . . . is denied . . . .") (emphasis

---

[2] For the reasons described below, the Plan Administrator (TAOC) clearly decided Plaintiff's benefits claim. In addition, as Defendants explained in their Standard of Review Statement, controlling legal precedent and the Plan's plain language establish that the arbitrary and capricious standard of review applies. *See* ECF No. 20.

added). The letters further explain how the Plan Administrator reached its determination. *See, e.g.*, ECF No. 21-7, at 1 ("The *Plan Administrator* based its decision on appeal on the express terms of the Plan as set forth above and the facts relating to Mr. Pappagallo's status as an Officer as defined for Plan purposes."). The appeal denial letter also specifically referenced Section 14 of the Plan, which, as described above, expressly states that TAOC is the Plan Administrator. *See* **Ex. 1**, § 14.b. Both letters were also signed by Peter Acker, who is TAOC's Vice President Total Rewards and a duly elected officer of TAOC—Acker is neither an employee of Tenneco Inc., nor authorized to act on its behalf. *See* **Ex. 3** (TAOC Officer's Certificate).[3]

Plaintiff makes two arguments, both of which attempt to ignore the substance of the letters sent to Plaintiff. To begin, Plaintiff focuses on the letterhead of the benefits determination letters. *See* ECF No. 21, at 7. The use of the Tenneco Inc. letterhead, however, merely reflects that TAOC is a wholly owned subsidiary of Tenneco Inc. (**Ex. 3**) and did not have its own letterhead.[4] Again, the content of both denial letters makes it clear that TAOC, as Plan Administrator, made Plaintiff's benefits determination. Plaintiff fails to provide any support that the use of standard company letterhead supersedes the actual content of a letter.

---

[3] After learning that Plaintiff intended to argue for the first time in this litigation that Tenneco Inc. had decided his benefit claim and appeal, Defendants provided Plaintiff with the TAOC Officer's Certificate to clear up his misperceptions about Acker's authority to sign the benefit denial letters on behalf of TAOC and to avoid needlessly expending the parties' and the Court's time and resources. The TAOC Officer's Certificate further negates the need for extra-record discovery.

[4] Defendants are willing to submit a declaration as further support upon request.

5

Plaintiff also references two letters that he received from counsel for Tenneco Inc., which requested that Plaintiff withdraw his August 6, 2019 Form 3 filing with the U.S. Securities & Exchange Commission (the "SEC") that falsely represented after the fact that he was a Section 16 officer of Tenneco Inc. *See* ECF No. 21, at 7; ECF No. 21-5, at 1. Plaintiff suggests that, in one letter, counsel "acknowledg[ed] that the denial of benefits came from Tenneco Inc. rather than the Plan Administrator." *See* ECF No. 21, at 5. That interpretation is a stretch.[5] Notwithstanding the verbiage choice, the letters were unrelated to the Plan Administrator's determination of Plaintiff's benefits claim—they were sent by Tenneco Inc.'s counsel because Plaintiff falsely claimed in his Form 3 filing to the SEC that he was an officer of Tenneco Inc., not TAOC. **Ex. 4** (SEC Form 3 Filing). In addition, Plaintiff's filing of the Form 3 and the letters from Tenneco Inc.'s counsel came *after* the Plan Administrator denied Plaintiff's initial benefit claim, and *after* the Plan Administrator cited Plaintiff's failure to file forms required for Section 16 officers in concluding that Plaintiff did not qualify for Group 1 benefits as a Section 16 officer. *See* ECF No. 21-3 (dated June 26, 2019).

If anything, the letters provide further support that Tenneco Inc. had never designated Plaintiff as one of its Section 16 officers—in other words, the Plan Administrator's basis for denying Group 1 benefits to Plaintiff was reasonable and correct. These letters do not, and cannot, change the fact that the Plan Administrator decided Plaintiff's benefits claim.

---

[5] The August 27, 2019 letter to Plaintiff incorrectly stated: "[T]he Company specifically told your client that he was not an 'officer' by letter dated June 26, 2019. . . ." ECF No. 21-5.

Finally, Plaintiff's procedural argument is belied by Plaintiff's own past recognition that TAOC, as the Plan Administrator, decided his benefits claim. The administrative record shows, for example, that Plaintiff's counsel sent his benefit appeal letter to the "Plan Administrator – Tenneco Automotive Operating Company Inc." ECF No. 21-4, at 1 (Aug. 19, 2019 Benefit Appeal Letter). Plaintiff and his counsel did not suggest that the wrong entity, Tenneco Inc., had decided his benefits claim.[6] Similarly, Plaintiff's complaint in this lawsuit specifically alleges that TAOC was the "Plan Administrator" and the entity that denied his claim for benefits. Compl. ¶ 47 ("the *Administrator* denied Pappagallo's appeal for benefits, and again failed to address—or contest—Pappagallo's recitation of his duties") (emphasis added); *see also id.* ¶¶ 4, 34. He filed this complaint in February 2020, *i.e.*, months after receiving the correspondence that he now contends reflects a procedural deficiency question. At no point during the administrative process did Plaintiff ever raise any arguments about the company's letterhead or the letters from Tenneco Inc. counsel. Had he done so, these issues would have been resolved at the administrative level without burdening the Court. Plaintiff therefore has provided neither justification for his about-face, nor any basis for extra-record discovery.

**B.    Plaintiff's Allegations of Bias Do Not Support Discovery.**

   *1.    Regardless of Any Conflict, the Arbitrary and Capricious Review Standard Applies.*

As a threshold matter, Defendants object to Plaintiff's attempt to reargue the appropriate standard of review in this procedural challenge. *See supra* at 2 n.1.

---

[6] In his appeal, Plaintiff conceded that the arbitrary and capricious standard applied. *Id.* at 1-2.

7

Nonetheless, even if there were "significant" evidence that Plaintiff's alleged structural conflict of interest affected the benefits determination—and there is not, *see* Section B.3, *infra*—that would not change the applicable arbitrary and capricious standard of review. In fact, both cases that Plaintiff cites in support of his bias arguments employ that highly deferential review standard. *See* ECF No. 21, at 9–10; *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009) ("we review this case under the highly deferential arbitrary and capricious standard, while bearing in mind that a conflict of interest exists"); *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984–86 (6th Cir. 1991) (the "conflict must be weighed as a factor in determining whether there is an abuse of discretion").

    2.    *No Conflict of Interest Exists.*

Plaintiff's claim of bias rests entirely on its argument that Tenneco Inc., rather than the Plan Administrator, decided Plaintiff's benefits claim. According to Plaintiff, because Tenneco Inc. both controls the amount of severance benefits and has to fund those benefits, Tenneco Inc. has an "inherent conflict of interest" that led to the denial of Plaintiff's claim. ECF No. 21 at 9–10. However, as explained in Section A.2, *supra*, the administrative record is clear that the Plan Administrator, TAOC—not Tenneco Inc.—made the benefits determination. As Plaintiff repeatedly recognizes in his procedural challenge, Tenneco Inc. and the Plan Administrator are distinct entities. *See, e.g.*, ECF No. 21, at 9 (distinguishing between Tenneco Inc. and the Plan Administrator in discussing which entity made the final determination on Plaintiff's benefits claim). Because Plaintiff's conflict theory is incorrectly premised on Tenneco Inc. both deciding and being responsible for paying his

benefits, he has failed to establish any conflict of interest, let alone any legitimate bias stemming from such a conflict.

      3.    *Plaintiff Fails to Sufficiently Allege Evidence of Bias.*

Even if Tenneco Inc. (instead of the Plan Administrator) decided Plaintiff's benefits claim—and it did not—Plaintiff fails to meet his burden to establish that he is entitled to limited discovery under *Wilkins*. Simply alleging a conflict of interest is inadequate. It is well-established in the Sixth Circuit that a plaintiff is required "not only to show the purported existence of a conflict of interest, but also to provide 'significant evidence' that the conflict actually affected or motivated the decision at issue." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007) (citing *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir.1998)); *see also Guest-Marcotte v. Life Ins. Co. of N. Am.*, 730 F. App'x 292, 304 (6th Cir. 2018) ("[A]n ERISA claimant must first provide sufficient evidence of bias—or of any procedural irregularity—to justify prehearing discovery. . . . [A] mere allegation of bias is insufficient to throw open the doors of discovery in an ERISA case.") (internal quotations omitted). This requirement of "significant evidence" is consistent with limiting discovery to "advance[] ERISA's primary goal of providing a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Price v. Hartford Life & Acc. Ins. Co.*, 746 F. Supp. 2d 860, 864 (E.D. Mich. 2010); *see also Geer v. Hartford Life & Acc. Ins. Co.*, 2009 WL 1620402, at *4 (E.D. Mich. June 9, 2009) (To hold "that an inherent decision maker/payor conflict automatically entitles a benefits claimant to discovery . . . would effectively eliminate the general rule against discovery in ERISA suits in a substantial proportion of such cases.").

9

Plaintiff's complaint is devoid of any allegations relating to the "inherent conflict of interest" that he now complains about. Plaintiff also does not proffer any evidence, much less "significant" evidence, that the alleged conflict of interest motivated the benefit denial. Even if Tenneco Inc. had made the benefits decision (and again, it plainly did not), Plaintiff points only to the two letters from Tenneco Inc.'s counsel separately requesting that Plaintiff withdraw his SEC Form 3 filing falsely representing that he was a Section 16 officer of Tenneco Inc. ECF No. 21, at 10; **Ex. 4**. Plaintiff tellingly does not explain how the purported conflict of interest actually led to the benefit denial—as opposed to how, as Tenneco Inc. counsel explained in his letters, Tenneco Inc. had determined that Plaintiff was not a Section 16 officer at the start of the Plaintiff's employment with the company, *i.e.*, well before Plaintiff's termination and severance benefits determination (*see* ECF No. 21-5, at 2). Furthermore, Plaintiff cannot show that those letters are evidence that a conflict of interest affected the benefits determination when (i) the initial decision was made *before* Plaintiff filed the Form 3 with the SEC in response to the Plan Administrator's benefit denial and *before* Tenneco Inc. counsel sent those letters requesting Plaintiff withdraw the form and (ii) the primary basis for the Plan Administrator's denial of the benefit appeal was the same as that for the initial claim denial.[7] Plaintiff's bare assertion that Tenneco Inc.'s counsel "presumably" affected the benefits outcome (ECF No. 21, at 10) is both a red herring in light of the alleged structural conflict and is otherwise insufficient to support extra-record discovery.

---

[7] Both the claim and appeal denial letters cited the fact that Tenneco Inc. did not designate Plaintiff as a Section 16 officer. *See* ECF Nos. 21-3, 21-7.

10

**C.     Plaintiff's Allegations Regarding the Quality of the Plan Administrator's Decision-Making Are Irrelevant and Lack Any Basis.**

*1.     Plaintiff's Arguments Improperly Relate to the Merits of the Case.*

Plaintiff's allegations that the denial of benefits was not supported by "deliberate principled reasoning," "substantial evidence," and a "full and fair review" (ECF No. 21, at 10–14) seek to introduce evidence on the substantive determination, rather than to assist with discovery for procedural inquiries. Arguing whether there was support for the benefit denial is simply an argument that the benefits determination was arbitrary and capricious, and, at this stage, it is premature. *See Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 618 (6th Cir. 2006) (applying arbitrary and capricious standard to "determine whether MetLife made a deliberate, principled, and reasoned decision that Elliott's condition would not preclude her from performing her occupation").[8] The purpose of the Cross Motions contemplated by the Court's Scheduling Order (ECF No. 18, at 2) is to address the propriety of the Plan Administrator's benefit denial after the Court resolves the current procedural arguments.

Plaintiff also does not provide any support for his position that his disagreement with the benefits decisions entitles him to unspecified extra-record discovery. In fact, all of the cases Plaintiff relies on are decisions on the merits that resolved the outcome of the case. *See, e.g., Elliott*, 473 F.3d at 618 (remanding decision to the plan administrator);

---

[8] To the extent the Court finds that Defendants' review lacked principled reasoning, was not supported by substantial evidence, or failed to provide Plaintiff with a full and fair review, it should remand the case to the Plan Administrator to address those defects, as in *Elliot*.

11

*Caudill v. Sears Transition Pay Plan*, 714 F. Supp. 2d 728, 737 (E.D. Mich. 2010) (awarding benefits to plaintiff).

  2. *The Denial of Plaintiff's Benefits Claim Resulted From a Principled and Reasoned Decision-Making Process.*

The administrative record is replete with evidence of Defendants' principled and reasoned process in making Plaintiff's benefits determination. Applying the Plan's plain language, the Plan Administrator reasonably relied on Tenneco Inc.'s determination of which of its employees were the company's Section 16 officers. *See* ECF Nos. 21-3, 21-7.

As Tenneco Inc. counsel explained to Plaintiff in the SEC Form 3 letters that Plaintiff now highlights, Tenneco Inc.'s Board of Directors "periodically examines the roles and responsibilities of its management-level employees and makes affirmative determinations regarding those employees" and their qualification as Section 16 officers.[9] ECF No. 21-5, at 1-2. The Tenneco Inc. Board made these determinations when it acquired Plaintiff's prior employer (Federal-Mogul), designating as Section 16 officers two of Plaintiff's superiors, including one to whom he reported, but not Plaintiff. *Id.* at 2; **Ex. 5** (Tenneco Inc. Board of Director Meeting Minutes dated Oct. 10, 2018), at PAPPA00035-36, PAPPA00043. These individuals properly filed Form 3s with the SEC after being designated as Section 16 officers. ECF No. 21-5, at 2. At no point during Plaintiff's brief tenure as Vice President and General Manager Braking from October 2018 to April 2019

---

[9] This is consistent with the Section 16 regulations, which provide that, "If pursuant to Item 401(b) of Regulation S-K (§ 229.401(b)) the issuer identifies a person as an 'executive officer,' it is presumed that the Board of Directors has made that judgment and that the persons so identified are the officers for purposes of Section 16 of the Act . . . ." 17 C.F.R. § 240.16a-1(f).

12

did Tenneco Inc. ever designate Plaintiff as a Section 16 officer. *See* **Ex. 6** (Tenneco Inc. Officer Lists), at PAPPA00044–45. Nor did it designate other employees with the title of "Vice President" as Section 16 officers. *See id.*; **Ex. 5**, at PAPPA00043.

As Defendants will explain more fully in their Cross Motion on the merits of Plaintiff's benefits claim, the Plan Administrator also took Plaintiff's own actions into consideration. For example, in its initial denial letter, the Plan Administrator reasoned that Plaintiff himself did not believe he was a Section 16 officer because he did not, during his employment, file certain forms a Section 16 officer is required to file with the SEC. *See* ECF No. 21-3, at 1. Likewise, in its appeal denial letter, the Plan Administrator reasoned that Plaintiff's decision to file the Form 3 with the SEC in August 2019—which he filed *after* receiving the initial benefit denial letter and months after leaving the company—did not make him such an officer or entitle him to Group 1 benefits. *See* ECF No. 21-7, at 2.

      3.     *Plaintiff Received a Full and Fair Review of his Benefits Claim.*

Similarly, Plaintiff's claim that he did not receive a "full and fair review" lacks any basis. Pursuant to 29 U.S.C. § 1133, such a review is intended "(1) to notify the claimant of the specific reasons for a claim denial, and (2) to provide the claimant with an opportunity to have that decision reviewed by the fiduciary." *Buchanon v. Prudential Ins. Co. of Am.*, 2016 WL 4087233, at *3 (E.D. Mich. Aug. 2, 2016). Those elements are clearly satisfied here. The Plan Administrator informed Plaintiff of the specific reasons for its decision to deny his initial benefits claim. *See* ECF No. 21-3. And not only did Plaintiff have the opportunity for review by the fiduciary (*i.e.*, the Plan Administrator), but he also

took advantage of the Plan's claims procedures in appealing the denial of his benefits before bringing this lawsuit. *See* ECF No. 21-4.

**D.  Plaintiff's Alleged Document Deficiency Claim Is Without Merit.**

Plaintiff fails to identify any authority in support of his claim (at 14) that a purported failure to broadly provide "all" "relevant" documents to a plaintiff during the benefits claim process is a procedural deficiency that warrants extra-record discovery. Nor does Plaintiff identify what additional discovery he would need now when he concedes (at 14–15) that he received all relevant claims-related documents by the Court-ordered deadline of July 20, 2020 to produce the administrative record (ECF No. 18, at 2).

Plaintiff attempts to misdirect the Court by conflating the administrative record materials with the discrete list of Plan governance documents that are covered by ERISA § 104(b)(4)[10] and subject to statutory penalties under ERISA § 502(c)(1)(B). *See Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 706–07 (6th Cir. 2014); *see also Jordan v. Tyson Foods, Inc.*, 312 Fed. App'x 726, 735 (6th Cir. 2008) (holding that a participant's attempts to seek relief under ERISA § 502(c)(1)(B) for a failure to disclose materials covered by ERISA's claims regulations "is foreclosed by controlling case law").

Plaintiff had access to all relevant documents covered by ERISA § 104(b)(4) during the administrative claims process. Even before Plaintiff submitted his initial claim for benefits on May 30, 2019 (ECF No. 21-1), Plaintiff had already been provided multiple

---

[10] ERISA § 104(b)(4) provides in relevant part that: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

14

copies of the Plan Document, which is the sole "governing" document for the Plan and incorporates the Plan's summary plan description. *See* **Ex. 7**, at PAPPA00048 (Severance Package dated April 17, 2019) (enclosing the Tenneco Automotive Operating Company Inc. Severance Benefit Plan and Summary Plan Description (effective as of July 20, 2018)); **Ex. 8**, at PAPPA00112 (email to Plaintiff's Counsel dated May 21, 2019 attaching Plan Document and Separation Agreement). The Plan did not file any annual report (*i.e.*, Form 5500) with the U.S. Department of Labor and therefore had no annual report to disclose.[11] Therefore, in addition to not being entitled to any extra-record discovery, Plaintiff was timely provided all of the information to which he was entitled under ERISA.

## CONCLUSION

For the foregoing reasons, none of Plaintiff's procedural challenges warrants any discovery outside of the administrative record. Moreover, Plaintiff does not specify in his procedural challenge what extra-record discovery he is seeking at this stage in the case. Accordingly, this opposition only addresses the propriety of Plaintiff's request for extra-record discovery and not the scope of such discovery, if allowed. To the extent Plaintiff later does specify the limited discovery he is seeking, Defendants request leave to respond.

Dated: November 19, 2020

Respectfully submitted,

*/s/ Richard E. Nowak*
Richard E. Nowak
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
Phone: (312) 701-8809

---

[11] Annual reports filed with the U.S. Department of Labor are publicly-available on the Department's website: https://5500search.dol.gov/.

Fax: (312) 706-8140
rnowak@mayerbrown.com

Michael G. Brady
Warner Norcross + Judd LLP
2000 Town Center, Suite 2700
Southfield, MI 48075
Phone: 248.784.5032
mbrady@wnj.com

*Attorneys for Defendants*